NICHOLAS BARRY *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.   January 8, 1907. — February 27, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Negligence.   Street Railway.*

In an action against a street railway company for injuries incurred while the plaintiff
was operating a car of the defendant as a motorman by reason of a collision of
that car with another car of the defendant going in the opposite direction upon the
same single track, it appeared that the plaintiff was operating a car bound out-
ward from a city, and that a short time before the accident occurred his car was
on one of two parallel tracks approaching a portion of the road where there
was a single track for four hundred yards, with a turnout three hundred yards
from the point where he would enter the single track, that he knew his car was
late, and also knew that an inward bound car was due at the turnout in about
one minute, that a rule of the defendant provided that inward bound cars had
the right of way, and provided also that the utmost care and judgment must be
used in the operation of cars on a single track and that the danger of collision
in the night or during fog or storm must always be borne in mind, that it was
in fact the custom for the inward bound car to leave the turnout and enter on
the single track unless the outward bound car was in sight, that owing to a grade
and a curve an outward bound car was hidden from a car on the turnout until
it was within fifty yards from the turnout, that it was before seven o'clock on
a foggy morning at the end of October and the plaintiff could see only three
or four car lengths ahead, that the lights of the car were lighted and the rails
were slippery, that to get to the turnout before the inward bound car would
leave it, if on time, the plaintiff would have to run his car at the rate of about
ten miles an hour, that he entered on the single track and owing to the fog and
the condition of the rails ran his car at the rate of only six or seven miles an
hour for fifty or seventy-five yards when the other car loomed up out of the fog
about three or four car lengths away, that he put on the brakes, which did not
hold, and then let them off and put on the reverse lever, which did not stop the
car, and the collision occurred.   *Held*, that in entering on the single track when
under the circumstances he could not run the car prudently at the rate necessary
to reach the turnout in safety the plaintiff as matter of law was negligent and
this negligence contributed to the injury, so that he could not recover even if
the defendant was negligent.

TORT for personal injuries incurred on October 30, 1901,
while the plaintiff was operating a car of the defendant as a
motorman by reason of a collision of that car with another car
of the defendant in the manner described in the opinion, with a
count at common law alleging a failure of the defendant to fur-

nish the plaintiff with safe appliances, machinery and instrumentalities, and a second count under the employers' liability act alleging a defect in the ways, works or machinery of the defendant. Writ dated December 3, 1901.

In the Superior Court *White,* J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. E. McConnell,* (*J. P. Magenis* with him,) for the plaintiff.

*S. H. E. Freund,* (*E. P. Saltonstall* with him,) for the defendant.

LORING, J.   The plaintiff in this case was a motorman in the employment of the defendant. He was injured by a collision between his car and another car of the defendant going in opposite directions on a single track.

The plaintiff had been in the defendant's employ for fifteen months, and had been furnished with a book of rules which it was his duty to read and which he testified that he had read. On the morning in question, October 30, 1901, he left Arlington Centre for Sullivan Square, Boston, and return, the whole being an hour's trip. When five minutes away from the terminus in Arlington Centre there is a single track for four hundred yards, with a turnout three hundred yards from the Boston end of the single track, leaving one hundred yards between the turnout and the Arlington end of the single track. For about three hundred and fifty yards from the Boston end of the single track, that is to say, to a point fifty yards short of the turnout, there is a slight up grade. A car coming from Boston is hidden from a car on the turnout by the hill just described and by a curve at that point until the Boston car is fifty yards away from the turnout.

The plaintiff's car was due at Arlington at 6.43. It was 6.46, or between 6.45 and 6.46, when the plaintiff's car was a car length short of the Boston end of the single track, that is to say, it was then three minutes later than the hour it was due at Arlington, a run of five minutes. In other words, it was then eight minutes late. There was an inward bound car due to leave Arlington at 6.43. That car was due at the turnout at 6.47. It was a minute's run from the Boston end of the single track to the turnout after getting straightened out from slowing down to cross on to the single track. The fourteenth rule in the defendant's rule book is in these words: " Inward cars have the right

of way and every precaution must be taken to know that the track is clear before leaving turnouts.  The utmost care and judgment must be used in the operation of cars on single track. Extra cars are liable to be met at any time and the danger of collision in the night or during fog or storms must always be borne in mind.  Always take the safe course." It was in fact the custom for the inward bound car to leave the turnout and enter on the single track unless the outward bound car was in fact in sight.

The morning in question was foggy.  The plaintiff testified that when he reached the Boston end of the single track you could see three or four car lengths away.  The rails were slippery.  The evidence was conflicting as to there being leaves on the tracks.  It does not appear how light it was, but it does appear that the lights were lighted.  The plaintiff looked at his watch just before entering the single track, and finding that it was 6.46, or between 6.45 and 6.46, he entered on that track and ran at six to seven miles an hour for some fifty or seventy-five yards, when the other car loomed up out of the fog some three or four car lengths away.  He put on the brakes; they did not hold; thereupon he let them off and put on the reverse lever; that did not stop his car, the two cars came into collision, and the plaintiff suffered the injuries here complained of.

There was evidence as to the negligence of the defendant which we do not find it necessary to state, as in our opinion the plaintiff as matter of law was negligent and his negligence contributed to the injury.

The running time from the Boston end of the single track to the turnout, a distance of three hundred yards, is stated in the evidence to be one minute.  To run that distance in that time requires a speed of nearly ten miles an hour.  To get to the turn-out before the inward bound car left it (if that car was on time), the plaintiff had to run on substantially schedule time, namely, about ten miles an hour.  He ran his car at the rate of six or seven miles an hour only.  Doubtless under the circumstances he was right in not going faster.  The day was so foggy that he could see ahead three or four car lengths only, and the rails were slippery.  But the fact that under the circumstances he could not run with safety at the rate necessary to reach the turnout in

safety, shows that he ought not to have entered on the single track at all.

*Exceptions overruled.*